UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                              Case No. 8:10-cr-498-T-17TBM

**CEDRIC RECHE ALLEN**

_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the court for a report and recommendation on Defendant, Cedric Reche Allen's **Motion to Suppress** (Doc. 29) and the government's response in opposition (Doc. 30).[1] An evidentiary hearing was conducted October 20, 2011. For the following reasons, I recommend that the motion be denied.

A.

Defendant, Cedric Reche Allen (Defendant or Mr. Allen) seeks to suppress evidence seized from his vehicle on or about June 7, 2010, by undercover detectives of the Hillsborough County Sheriff's Office. Mr. Allen maintains that the search was conducted without a search warrant and outside of any recognized exception to the warrant requirement. In particular, he argues that the search cannot be justified as a search incident to arrest nor was it a proper inventory search. In response, the government urges that the search and seizure were lawful because they occurred during an inventory for impound of the vehicle.[2]

---

[1] At the direction of the court, the government has filed two additional submissions. *See* (Docs. 43 and 46).

[2] At the hearing, counsel for the government indicated he was defending the search on the basis of it being a valid inventory search and not on the basis that it was a lawful search

B.

Evidence from the evidentiary hearing reveals that Deputy Scott Morris is a nineteen and a half year veteran with the Hillsborough County Sheriff's Office and currently is working patrol. In March through June 2010, he was acting as an undercover narcotics detective for the department. In that capacity, he came into contact with the Defendant and made purchases of crack cocaine from him. On June 7, 2010, Deputy Morris contacted Defendant and arranged to meet him at a Steak 'n Shake restaurant in Citrus Park for purposes of buying 100 Oxycodone tablets. At approximately 4:00 p.m., during a telephone call, the deputy confirmed that he wished to buy the pills and Defendant indicated the price would be $11.00 per pill. It was left for the deputy to re-contact Defendant when he was ready to proceed. According to the deputy, he called the Defendant again at approximately 5:00 p.m. to set up the meeting for that evening. Prior to proceeding to the Steak 'n Shake, the deputy learned that there were a number of outstanding warrants for the Defendant's arrest and the plan was to take the Defendant into custody that evening on those warrants at least. Between 6:30 and 7:00 p.m., the deputy drove to the Steak 'n Shake and parked in the parking lot. He could see that the Defendant was already present in the parking lot, seated in a silver automobile backed into a parking space. The deputy was unfamiliar with the car. At that time, the deputy also observed three other individuals in or around the car. When these individuals moved away, the deputy called the Defendant on his cell phone to let him know that he too was in the parking lot and to advise the Defendant to come over to his vehicle. Numerous other deputies

---

incident to an arrest.

2

were on the scene to provide cover and for purposes of Defendant's arrest. The Defendant approached Deputy Morris and indicated that he did not have the pills and would have to go get them. Morris told him to do so and the Defendant returned to his car. As he began pulling forward, several vehicles "marked" and "unmarked" surrounded the car. The Defendant was taken out of the car, handcuffed, and placed into a police vehicle.

Although Deputy Morris has no first-hand knowledge, he testifies that the sergeant on the scene gave the order to inventory the vehicle. Morris observed two or three other members of his undercover unit and the District 3 Street Crime Unit hovering around the Defendant's vehicle and then they began to search it. Shortly thereafter, one of the undercover detectives brought a red cup to him from the center console. Inside the red cup was an ounce and a quarter of suspected crack cocaine in 5 baggies.

By Deputy Morris's account, the car was impounded in this instance per department policy because it was used in the commission of a felony. As a consequence, it had to be inventoried for drugs and/or weapons and towed to impound. According to the deputy, it is the normal practice of the Sheriff's department to impound vehicles used in felony offenses even if there are others to whom the vehicle could be turned over to. (In the case of misdemeanors, the vehicle may be left where it is or turned over to innocent third parties in appropriate circumstances.) Here as it turned out the car was owned by a rental company and later was returned to the rental company.

On cross-examination, the deputy denied that he was aware that this vehicle was rented by the Defendant, although the deputy acknowledged that in prior deals, the vehicle(s)

3

used by the Defendant were rented. The Defendant was not given a notice that the seizure was pursuant to the Florida Contraband Act. Deputy Morris indicated that to his knowledge, the owner of the property did not request the car to be moved and the deputy saw no public safety concern about where the vehicle was parked. There was no effort made to pursue an alternative to impoundment.[3] The vehicle was in a lighted parking lot and not parked in violation of any county ordinance.

The search in this case followed closely on the Defendant's arrest and was conducted by one or more undercover detectives or members of the street crime unit. The deputy believed the inventory search was done by Detective Maze, who was a part of his unit.[4] Deputy Morris believed that Deputy Robert Sparks impounded the car, and he would have made an electronic report of the same.

Post-hearing submissions by the government include the Hillsborough County Sheriff's Office Standard Operating Procedure (SOP) for impounded property and vehicles. (Doc. 43-1). By this SOP, deputies are authorized to impound vehicles from public property when "[i]t is being seized in accordance with the Florida Contraband Forfeiture Act." *Id.* at 3. The SOP further dictates that deputies "will complete an offense report and vehicle sheet (Case Number) for all vehicles that are impounded for any reason." *Id.* Further, "[d]eputies shall inventory and list the contents of all impounded vehicles on the vehicle report." *Id.* at 2.

---

[3] The deputy believes that the three people seen earlier at Defendant's car were stopped by other officers but were no longer at the scene.

[4] Detective Maze is purportedly unavailable.

Additionally, the Sheriff's Office's file on this matter includes, among other things, a Criminal Report Affidavit completed by Deputy Morris (Doc. 46-1 at 2-4) and a Property Receipt completed June 7, 2010, at 7:05 p.m. *Id.* at 6.[5] The receipt lists three items of property: crack cocaine, a blue cellular telephone, and a Sony camera.[6] *Id*. A further report reflects that the vehicle was towed to a storage facility and subsequently released to the owner on June 15, 2010. *Id.* at 19-22.

C.

In essence, the Defendant urges that the so-called inventory search conducted in this case was a pretext for undercover officers to rummage through the vehicle for incriminating evidence or drugs. He argues that the search was not in compliance with the Hillsborough County procedures and was nothing more than a pretext for a warrantless search of his car. Citing a portion of the written policy for inventory searches and impoundment (*see* Doc. 29 at 12), the Defendant urges that, at best, the deputies may claim that impoundment was necessary in this instance because the owner of the property was unavailable.[7] And, in that circumstance, the policy permitting the impoundment hinges on there being no alternatives in

---

[5]A second Property Receipt dated December 3, 2010, reflects one compact disc. *Id.* at 16.

[6]The identity of the person who prepared this inventory is unclear although it does not appear that it was Detective Maze or Deputy Sparks as indicated by Deputy Morris. This filing also includes two documents seemingly related to the impound and the condition of the car at that time. *Id.* at 24-25.

[7]The provision cited by Defendant as the only one possibly applicable to this impoundment permits impoundment when: "[t]he driver/owner of the property is unavailable (arrested, out of town, injured, etc.) and alternatives in lieu of impoundment have been examined." Because no alternatives were "examined" prior to impound, he urges noncompliance with the SOP.

lieu of impoundment. Given that there is no proof that such alternatives to impoundment were explored and Mr. Allen himself was never given the opportunity to release the vehicle to a designee, the search and impoundment were in violation of the stated policy and unlawful.

The government argues in its response that the search and seizure in this case were made pursuant to a valid inventory search for impoundment. At the hearing, the government added that the evidence supports the Defendant had committed a felony and that the vehicle was appropriately seized as "contraband" in accordance with the Florida Contraband Forfeiture Act and in accordance with the department policy permitting such impoundment when the property is seized in accordance with the Florida Contraband Forfeiture Act. Contrary to the Defendant's argument, it urges that under that Act, personal property such as a vehicle, which is used or attempted to be used as an instrumentality in the commission of a felony, is by definition a contraband item. *See* Fla. Stat. § 932.701(2)(a)5. Thus, the vehicle was appropriately impounded and then searched. The fact that in this case that it was later determined that the vehicle was owned by a rental company does not invalidate the appropriateness of the initial impoundment and any search conducted in relation to impoundment. In addition to this authority under the policy to seize items as contraband, the government urges that the deputies were duty-bound to impound and search the vehicle in the interest of the safety and security of any property contained therein.

D.

Evidence seized during an inventory search is admissible at trial as long as the inventory search is conducted pursuant to standard police policy criteria and the search is limited to effectuation of the recognized purposes for which it was conducted and was not
6

used as merely a pretext for an otherwise unlawful investigative search. *United States v. Bosby*, 675 F.2d 1174, 1179 (11th Cir. 1982). The purpose of such guidelines is to protect the individual's possessions and to safeguard officers from false claims. *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991).

Probable cause to believe that the vehicle was used in the commission of a felony, under the Florida Contraband Act, is sufficient to permit the seizure of the vehicle itself. *See Florida v. White*, 526 U.S. 559, 565 (1999) (although the police lacked probable cause to believe that the defendant's car contained contraband, the officers had probable cause to believe that the vehicle itself could be seized and inventoried under the Florida Contraband Forfeiture Act). Once the vehicle has been lawfully impounded, the police may conduct an inventory search provided the search is conducted in accordance with standardized criteria. Thus, as stated by the Eleventh Circuit,

> [e]ven if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of "something other than suspicion of evidence of criminal activity." If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria.

*Sammons. v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 455 (1971)).

On the record presented, I am obliged to conclude that the deputies had probable cause to believe that Defendant's vehicle was "contraband" in contemplation of the Florida Contraband Act. That Act provides in pertinent part that a "contraband article" thereunder

includes a "vehicle of any kind, . . . , which was used or was attempted to be used as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony . . . ." Fla. Stat. § 932.701(2)(a)5. Here, the vehicle was an instrumentality in the attempted commission of a felony drug offense by the Defendant.[8] There is nothing presented to contradict the deputy's testimony that this was the basis for the seizure and that such was pursuant to the policy and practice of his department in such circumstances. Further, as noted above, the written policy of the Hillsborough County Sheriff's Office authorizes deputies to remove vehicles from public property when, among other circumstances, "[i]t is being seized in accordance with the Florida Contraband Forfeiture Act (SOP 504.01)." HCSO SOP 504.00.VI.I. It follows that law enforcement may then inventory the vehicle. Thus, to paraphrase from *White*, while these deputies lacked probable cause to believe that this vehicle contained contraband, they had probable cause to believe that it could be seized and inventoried under the Florida Contraband Act. While Defendant suggests that Deputy Morris knew the car was a rental vehicle based on his knowledge that the prior cars used by the Defendant were rentals, such is not established. On the contrary, the deputy testified that he was unaware that the vehicle Defendant was then using was a rental car prior to its seizure and the search, and there is no evidence of what any of the other deputies knew about the matter.

---

[8]Defendant's argument that the deputies cannot claim the benefit of the Act because they failed to provide notice due under the Act is unavailing. The Act dictates that notice may be given post-seizure. Fla. Stat. § 932.703. Here, as indicated, subsequent to the seizure, the car was determined to be a rental vehicle and forfeiture was not pursued. The other items seized were secured for use as evidence.

8

Under the SOP, once the property was lawfully seized, the officers were authorized to conduct an inventory search. Thus,

> Deputies shall inventory and list the contents of all impounded vehicles on the vehicle report. Any articles of value greater than $300, such as cameras, tools, etc., as well as jewelry, money, and cell phones, should be recorded on a property receipt and taken into custody. HCSO SOP 504.00.V.D.

Here, while the testimony regarding the inventory search is incomplete, the post-hearing submissions clarify that deputies performed an inventory of the vehicle and secured certain property therein as evidence. The vehicle was then towed to an impound yard for safe-keeping and later released to its owner.

While I think it unlikely that Detective Maze and the other undercover detectives entered this vehicle to conduct an inventory search in the true sense, by my consideration, even if the seizure of the crack cocaine at that time was improper as not part of an actual inventory search, I think the legal result is the same as such evidence would have inevitably been found during the formal inventory and towing process. According to Deputy Morris, upon the Defendant's arrest, the car was to be impounded per policy and the sergeant's directive. Thus, even if Maze's or the other detectives' search was to look for drugs or evidence rather than to inventory the contents for impoundment, the impound process had begun and inevitably and undeniably, this process would have resulted in the discovery of the crack cocaine.

In sum, either because the search was a valid inventory search or on principles of inevitable discovery, the search should be upheld. *See Williams*, 936 F.2d at 1248; *United States v. Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997); *United States v. Zapata*, 18 F.3d 971, 978-79 (1st Cir. 1994).

E.

Accordingly, it is recommended that Defendant Cedric Reche Allen's **Motion to Suppress** (Doc. 29) be **DENIED**.

> Respectfully submitted on
> this 5th day of December 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2); M.D. Fla. R. 6.02.

Copies to:
Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record